UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

CATHERINE WILLIAMS

CIVIL ACTION

VERSUS

STATE OF LOUISIANA

No. 14-00154-BAJ-RLB

## RULING AND ORDER

Before the Court are two **Motions for Partial Summary Judgment (Docs. 14, 18)** filed by Defendant State of Louisiana ("Defendant"). Defendant seeks summary judgment in this action on the grounds that Plaintiff Catherine Williams ("Williams" or "Plaintiff") failed to properly exhaust her administrative remedies under Title VII in filing this race and gender discrimination action, that Defendant is immune from suit for claims brought against it under 42 U.S.C. § 1981, that Williams failed to establish a prima facie case of gender discrimination under Title VII, and that Defendant had a legitimate, nondiscriminatory reason for its employment decision. Plaintiff has opposed both motions. (Docs. 15, 22). Oral argument is not necessary. Jurisdiction is proper pursuant to 28 U.S.C. § 1331. For the reasons stated below, Defendant's **Motion for Partial Summary Judgment (Doc. 14)** is **GRANTED IN PART** and **DENIED IN PART,** and Defendant's **Motion for Partial Summary Judgment (Doc. 18)** is **DENIED**.

1

## I.    BACKGROUND

### A.    Williams' Allegations and Defendant's Answer

Plaintiff avers that she is an African American female who was employed by the Louisiana Workforce Commission ("LWC" or "the Commission") from January 1980 until she retired in June 2011. (Doc. 1 at ¶¶ 11, 13). At the time of the events in question, Williams states that she held the position of ORS Supervisor I within the Commission under the direct supervision of then-ORS Manager II, Debra Burch ("Burch"); had worked in the field of unemployment insurance for approximately twenty-three years; and had allegedly been considered an "excellent employee." (*Id.* at ¶¶ 16, 18, 19).

When the position of ORS Manager II opened to agency employees in February 2010, Williams avers she applied for the position. (*Id.* at ¶ 12). Plaintiff further alleges that Linda Sonnier ("Sonnier"), a Caucasian female Technical Specialist[1] with fewer than nine months experience as a supervisor and who was then supervised by Williams, also applied for the open ORS Manager II position. (*Id.* at ¶¶ 13, 20, 21, 24). Williams claims she was "passed over" for promotion to ORS Manager II on or about March 29, 2010 in favor of Sonnier because of Wiliams' "race and/or gender." (*See id.* at ¶¶ 7, 26, 31). Plaintiff further alleges that Sonnier did not meet the minimum supervisory qualification for the ORS Manager II position as published by Defendant, that Plaintiff had "more general and managerial experience" than Sonnier, and that Defendant "failed to follow its own

---

[1] Plaintiff characterizes the position of Technical Specialist as "equivalent" to the position of ORS Supervisor 1. (Doc. 1 at ¶¶ 21, 23).

verbal and/or written policies and procedures regarding antidiscrimination and personnel decisions/procedures." (*Id.* at ¶¶ 31, 33).

Williams seeks (1) a declaratory judgment that Defendant violated her right under Title VII of the Civil Rights Act of 1964 to be free from workplace discrimination, (2) an injunction ordering Defendant to pay Williams "full back pay, benefits, and reinstatement to a position [she] would have obtained in the absence of discrimination, or in the alternative, front pay," (3) reasonable attorney's fees and costs, (4) "interest on any awards at the highest rate allowed by law," and (5) any other relief the Court deems "just and appropriate." (*Id.* at ¶ 35).

Defendant denies all of Plaintiff's substantive allegations and asserts several defenses. (Doc. 11).

## B. Procedural History

Williams filed her Complaint on March 17, 2014.[2] (Doc. 1). Defendant filed its Answer on June 4, 2014.[3] (Doc. 11). Defendant filed its first **Motion for Partial Summary Judgment (Doc. 14)** on March 20, 2015. Plaintiff opposed the motion on April 10, 2015 (Doc. 15), and Defendant filed its Reply on May 8, 2015 (Doc. 20). Defendant then filed its Daubert Motion Or In The Alternative Motion In Limine (Doc. 17) and its second **Motion for Partial Summary Judgment (Doc. 18)** on May 7, 2015. Williams filed her Opposition memoranda to both motions on

---

[2] Plaintiff alleges that she received her Notice of Right to Sue from the United States Equal Employment Opportunity Commission ("EEOC") on December 19, 2013. (Doc. 1 at ¶ 9).

[3] Upon Defendant's motion (Doc. 8), the Court granted Defendant an extension of the deadline to file responsive pleadings until June 11, 2014. (Doc. 9).

May 28, 2015. (Docs. 21, 22). Defendant filed its Reply memoranda to both Opposition memoranda on June 18, 2015. (Docs. 29, 30).

## II.    LEGAL STANDARD

Pursuant to the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether the movant is entitled to summary judgment, the court views the facts in the light most favorable to the nonmovant and draws all reasonable inferences in the nonmovant's favor. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

After a proper motion for summary judgment is made, the non-movant "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal citations omitted). At this stage, the court does not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992). However, if "the evidence in the record is such that a reasonable jury, drawing all inferences in favor of the non-moving party, could arrive at a verdict in that party's favor," the motion for summary judgment must be denied. *Id.* at 1263.

On the other hand, the nonmovant's burden is not satisfied by some metaphysical doubt as to the material facts, or by conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence. *Little v. Liquid Air*

4

*Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal quotations omitted). Summary judgment is appropriate if the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, summary judgment will be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Sherman v. Hallbauer*, 455 F.2d 1236, 1241 (5th Cir. 1972).

## III.   ANALYSIS

### A.   Whether Williams' Title VII Charge of Discrimination Was Timely Filed

The Court must first consider whether Williams properly exhausted her administrative remedies by timely filing a charge of discrimination with the EEOC. A private plaintiff must exhaust her administrative remedies by timely filing a charge with the EEOC and receiving a right-to-sue notice before seeking relief from the Court. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002); 42 U.S.C. § 2000e-5(f)(1). Generally, Title VII's enforcement provisions require that an EEOC charge must be filed within 180 days after the alleged unlawful employment practice has occurred. 42 U.S.C. § 2000e-5(e)(1). However, a claimant has an extended, 300-day period in which to file an EEOC charge in a "deferral

state," such as Louisiana. *Conner v. La. Dep't of Health & Hosps.*, 247 F. App's 480, 481 (5th Cir. 2007).[4]

The United States Court of Appeals for the Fifth Circuit has observed that "[o]ne of the central purposes of the employment discrimination charge is to put employers on notice of 'the existence and nature of the charges against them.'" *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 878 (5th Cir. 2003) (quoting *EEOC v. Shell Oil Co.*, 466 U.S. 54, 77 (1984)). A charge must be "in writing under oath or affirmation," must sufficiently identify the parties, and must generally describe the action or practices that are the basis of the complaint. 42 U.S.C. § 2000e-5(b); 29 C.F.R. § 1601.12(b). Although the governing regulations list specific information that should be contained in each charge,[5] the regulations also provide that "[a] charge may be amended to cure technical defects or omissions," and that such amendments "related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received." 29 C.F.R. § 1601.12(b).

The Fifth Circuit has previously held that "an intake questionnaire that informs the EEOC of the identity of the parties and describes the alleged

---

[4] Defendant does not dispute that Plaintiff was allowed 300 days to file her claim in this case. (Doc. 14 at p.¶ 2).

[5] The regulation directs that each charge should contain (1) the full name, address, and telephone number of the claimant (unless excepted); (2) the full name and address of the person who allegedly committed the action or practices complained of; (3) a "clear and concise statement of the facts" of the alleged unlawful employment practices, including pertinent dates; (4) the approximate number of employees or members of the employer or labor union who allegedly committed the action or practices complained of, if known; and (5) information regarding whether and when proceedings concerning the alleged unlawful employment practice(s) have commenced before a state or local agency tasked with enforcing fair employment laws. 29 C.F.R. § 1601.12(a).

discriminatory conduct in enough detail to enable the EEOC to issue an official notice of charge to the respondent is sufficient to "'set[] the administrative machinery in motion.'" *Conner*, 247 F. App'x at 481 (quoting *Price v. Sw. Bell Tel. Co.*, 687 F.2d 74, 78 (5th Cir. 1982)). In *Price*, the Fifth Circuit reversed and remanded a grant of summary judgment for the defendant in a Title VII sex discrimination action in which a *pro se* claimant timely filed an intake questionnaire with the EEOC that did not fulfill all of the technical regulatory requirements of a charge. *Price*, 687 F.2d at 78–79. Notwithstanding the deficiencies of the intake questionnaire relative to the requirements of a charge, the agency still deemed the information provided to be sufficient to take action and notify the defendant. *See id.* at 76. The plaintiff met with an EEOC specialist within the statutorily prescribed period[6] "to *discuss her situation*, including the *possibility of charging* [the defendant] with sex discrimination." *Id.* (emphasis added). The EEOC specialist incorporated the factual basis of the plaintiff's complaint into an intake questionnaire on the plaintiff's behalf. *Id.* Subsequently, the EEOC advised the defendant in writing that the plaintiff had filed a charge of discrimination, further enclosing an "official Notice of Charge." *Id.*

Over the next two months, the plaintiff in *Price* sent two correspondences to the EEOC specialist to update her file and provide certain papers. *Id.* The EEOC specialist then responded to the plaintiff by mailing her "a draft of a proposed amended charge outlining certain instances of discriminatory treatment" and

---

[6] In *Price*, the plaintiff was allowed 180 days to file her charge. *Price*, 687 F.2d at 76.

instructing her to sign and return the amended charge within thirty days, under penalty of dismissal. *Id.* Instead of timely returning the signed, amended charge, the plaintiff purportedly mailed the EEOC specialist a document detailing discriminatory incidents.[7] *Id.* The EEOC recorded no activity in the matter during the next four and one-half months. *Id.* At the end of this period, the EEOC sent the plaintiff the statutory Notice of Right to Sue and notified the defendant of the letter's issuance. *Id.* The plaintiff filed suit in federal court ten days later. *Id.* The Fifth Circuit held that the plaintiff's "failure to file a 'perfected' charge" within the statutory filing period did not prejudice the defendant, and reasoned that the defendant's "receipt of the official notice of the charge . . . fulfilled the congressional purpose of imposing a filing limitation, the provision of 'prompt notice to the employer.'" *Id.* at 79 (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398 (1982)); *see also Harris v. Honda*, 213 F. App'x 258, 262 (5th Cir. 2006) (citing the Seventh Circuit in finding that "the primary difference between intake questionnaires and formal charges of discrimination is the notification requirement of a charge."); *cf. Fed. Express Corp. v. Holowecki*, 552 U.S. 389 (2008) (concluding that an intake questionnaire and affidavit requesting the agency take action to end the alleged discrimination, filed with the EEOC by an Age Discrimination in Employment Act complainant, could be deemed a charge because it could be "reasonably construed as a request for the agency to take remedial action to protect

---

[7] The Fifth Circuit noted that "delivery of this missive is disputed," in that the plaintiff maintained that she mailed it, but that the EEOC denied receiving it. *Price*, 687 F.2d at 76. However, the record of the case included "a copy of the first page of this document bearing a date stamp reflecting its receipt by the EEOC Dallas office . . . ." *Id.*

the employee's rights or otherwise settle a dispute between the employer and the employee.").

In 2007, the Fifth Circuit reiterated its holding in *Price. See Conner,* 247 F. App'x 480. The *Conner* Court reversed and remanded a race and disability discrimination and retaliation action that was dismissed by the district court on the ground that the plaintiff failed to timely file a verified EEOC charge. *Id.* at 481. The plaintiff filed an EEOC intake questionnaire 280 days after her employment was terminated. *See id.* The EEOC issued an official notice of charge to the plaintiff's employer on the next day, and the plaintiff filed a verified charge of discrimination one month later. *Id.* The district court dismissed the complaint and denied the plaintiff's motion for reconsideration because it concluded that the verified EEOC charge was untimely filed. *Id.* The Fifth Circuit held that the district court incorrectly dismissed the complaint for two reasons. First, the appeals court concluded that "the intake questionnaire was sufficient to constitute an EEOC charge" because "it informed the EEOC of the identity of the parties and described the alleged discriminatory conduct in enough detail to enable the EEOC to issue an official notice of charge." *Id.* Second, the Court noted that the intake questionnaire was filed within the statutorily prescribed time period.[8]

The facts here strongly parallel those in *Price* and *Conner.* It is undisputed that Williams learned she would not be promoted on March 29, 2010, and that she

---

[8] The *Conner* Court also noted that even if the EEOC intake form had been insufficient to constitute a charge of discrimination, the plaintiff's "reliance on the EEOC that is [sic] was sufficient would entitle her to equitable tolling." *Conner,* 247 F. App'x at 482 n.1. In this case, the EEOC issued documents noting that Williams filed her charge of discrimination on January 3, 2011 (Doc. 15-3 at p. 6) and/or that her charge was timely filed (Doc. 15-4 at p. 6).

submitted an intake questionnaire with the EEOC on January 3, 2011. (Doc. 14-2 at p. 1). As such, the Court finds that there are 281 days between when Plaintiff allegedly suffered an adverse employment action and when she filed her intake questionnaire with the EEOC, which is within the statutorily prescribed 300 day time period. Williams' intake questionnaire informed the EEOC of the employer's identity and of the employer's allegedly discriminatory act in enough detail to enable the EEOC to issue a Notice of Charge of Discrimination to Williams' employer on March 17, 2011. (Doc. 15-3 at p. 23). As in *Price*, Plaintiff and the EEOC then exchanged several correspondences in which Plaintiff worked with the agency to perfect her charge of discrimination. (*See e.g.*, Doc. 15-3 at p. 17–18, 19). The EEOC notified Williams' employer that she had filed an amended charge on August 31, 2011. (Doc. 15-3 at p. 21). As in *Conner*, the EEOC issued the amended charge after the statutorily prescribed 300-day period had passed, but the Court similarly finds that Williams' timely filed a charge of discrimination that prompted the EEOC to notify her employer and set the "administrative machinery" in motion, and therefore, an order of summary judgment for Defendant on this issue is unwarranted.

Defendant raises two additional arguments against the validity of Plaintiff's charge. First, Defendant avers that Williams checked the box on her intake questionnaire indicating that she wanted to speak to an EEOC employee before deciding whether to file a charge; that she understood that by checking the box, she was not actually filing a charge with the EEOC; and that she "could lose [her]

rights if [she did] not file a charge in time." (Doc. 14-3 at p. 5; Doc. 14-1 at p. 5). As such, Defendant argues, Plaintiff did not file a charge of discrimination until she filed the amended charge on August 28, 2011. (Doc. 14-1 at p. 5). This argument is not in line with the Fifth Circuit's precedent as established in *Price* and *Conner*. When Williams filed her intake questionnaire on January 3, 2011, she activated the EEOC's "administrative machinery." Had Williams checked the box on the intake questionnaire indicating that she wished to file a charge at that time, the EEOC's notification process would have proceeded in same manner as it did here. In addition, the language of the box Plaintiff checked on her intake questionnaire indicated that she "could" lose her rights if she checked the box, not that she absolutely would. This permissive language is consistent with Fifth Circuit case law which emphasizes the EEOC's notification of the employer and the Circuit's "[construction of] employment discrimination charges with the utmost liberality," over the administrative formalities of filing a charge. *Price*, 687 F.2d at 78 (internal quotations omitted); *cf. Harris v. Honda*, 213 F. App'x 258, 262 (5th Cir. 2006) (noting that "the primary difference between intake questionnaires and formal charges of discrimination is the notification requirement of a charge).

Second, in its Reply Memorandum, Defendant notes an alleged discrepancy between Plaintiff's deposition testimony and her affidavit submitted in support of her Opposition to Defendant's partial summary judgment motion. Defendant contends that Plaintiff's affidavit states that she first "spoke with" an EEOC representative on January 3, 2011, and that she advised the representative that

she wanted to file a charge at that time, but that she was advised that "her intake questionnaire was considered a charge." (Doc. 20 at p. 1). However, Defendant also contends that Plaintiff testified in her deposition that the "first time she went to the EEOC office" regarding her complaint was on January 5, 2011, and that she wanted to discuss her situation and file a complaint, but did not meet with any EEOC representative. (*Id.* at p. 2). Defendant asserts that this discrepancy renders Plaintiff's affidavit a "sham affidavit" that should not be afforded evidentiary weight, making summary judgment in Defendant's favor appropriate. (Doc. 20 at p. 1–2). The Court is not persuaded by this argument. Assuming without deciding that this inconsistency raises concerns regarding the evidentiary weight the Court will assign the affidavit in question, Williams' timely filing of her charge of discrimination is amply supported by evidence of the EEOC's documents and correspondence. As such, Defendant's "sham affidavit" argument is not sufficient to move the Court to award it summary judgment on this issue.

### B. Whether Williams' § 1981 Claim is Barred by the Eleventh Amendment

Second, the Court must decide whether Plaintiff's claim against Defendant under 42 U.S.C. § 1981 is barred by the Eleventh Amendment. Williams presents three arguments in opposition to Defendant's claim of sovereign immunity. (Doc. 14 at p. 1; Doc. 15). First, Williams avers that the Louisiana Workforce Commission is not an "arm of the state" entitled to Eleventh Amendment immunity. (Doc. 15 at p. 3). Second, Plaintiff argues that because the range of relief she seeks includes (1) a declaratory judgment that Defendant violated her right to be free from

discrimination under Title VII and (2) an injunction "ordering Defendant State of Louisiana to make Petitioner whole with full back pay, benefits and reinstatement to a position Ms. Williams would have obtained in the absence of discrimination, or in the alternative, front pay," that the Eleventh Amendment does not bar her § 1981 claim. (Doc. 15 at p. 9). Third, Williams appears to contend that Defendant waived sovereign immunity by (1) failing to raise it as an affirmative defense in its Answer and (2) participating in this litigation by conducting depositions and filing several pleadings. (Doc. 15 at p. 9–11). These arguments are not supported by current case law and, as such, the Court concludes that Williams' § 1981 claim is barred by the Eleventh Amendment.

Section 1981 prohibits racial discrimination in the making and enforcement of contracts; the rights to sue, be sued, and give evidence; and the right "to the full and equal benefit of all laws and proceedings for the security of persons and property." *See* 42 U.S.C. § 1981(a). The statute "reaches beyond the formation of employment contracts and covers the entire 'contractual relationship,' including employment discrimination." *Evans v. City of Hous.*, 246 F.3d 344, 357 (5th Cir. 2001) (quoting *Dennis v. County of Fairfax*, 55 F.3d 151, 155 (4th Cir. 1995)). However, the Eleventh Amendment grants states sovereign immunity from lawsuits in federal court, and also bars suits against state agencies because such suits are considered suits against the state. *Vogt v. Bd. of Comm'rs of Orleans Levee Dist.*, 294 F.3d 684, 688–89 (5th Cir. 2002). "The 'ultimate guarantee of the Eleventh Amendment' . . . is that a non-consenting State may not be sued in federal

court by private individuals, including its own citizens." *Id.* at 688 (quoting *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001)). Congress may abrogate a state's sovereign immunity, but "the Court is aware of no case . . . allowing a suit against a state or arm of a state, in federal court, based on § 1981." *Coleman v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, Civil Action 15-35-JJB, 2015 WL 3872256, at *2 (M.D. La. June 23, 2015).

Plaintiff's argument that the Louisiana Workforce Commission is not an "arm of the state" and, therefore, does not enjoy sovereign immunity, is inapposite. (Doc. 15 at p. 3–8). As recently as 2010, this Court dismissed an action directly naming the Louisiana Workforce Commission as a defendant on the ground that the state has sovereign immunity from suit. *See Sandres v. La. Workforce Comm'n*, Civil Action No. 09-0652-RET-CN, 2010 WL 565378 (Feb. 17, 2010). Here, Williams does not sue the Louisiana Workforce Commission, but names as defendant the State of Louisiana itself. The State of Louisiana enjoys sovereign immunity from § 1981 actions. Therefore, Plaintiff's § 1981 claim cannot stand.

Plaintiff's argument that her § 1981 claim must survive because she seeks equitable relief in addition to money damages must also fail. The Supreme Court has held that, "regardless of the nature of the relief, 'a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by' state sovereign immunity." *Fontenot v. McCraw*, 777 F.3d 741, 753 (5th Cir. 2015). If Williams were to secure a judgment against Defendant on her § 1981 claim, Williams' prayer for relief in the form of an injunction

"ordering *Defendant State of Louisiana* to make Petitioner whole with full back pay, benefits and reinstatement to a position Ms. Williams would have obtained in the absence of discrimination, or in the alternative, front pay" would necessarily be paid from the state treasury. (emphasis added). As such, Plaintiff's request for this type of injunctive relief is prohibited.

Similarly, Williams has not alleged an ongoing violation of federal law in her Complaint. The Supreme Court has held that in cases where there is no claim of a continuing violation of federal law, and where the parties dispute whether the defendant's past actions are lawful, but where the award of money damages or restitution would be barred by the Eleventh Amendment if the dispute were resolved in favor of the plaintiff:

> The issuance of a declaratory judgment in these circumstances would have much the same effect as a full-fledged award of damages or restitution by the federal court, the latter kinds of relief being of course prohibited by the Eleventh Amendment.

*Green v. Mansour*, 474 U.S. 64, 73 (1985). As such, Williams' request for a declaratory judgment is also prohibited.

Plaintiff's contention that Defendant has somehow waived its sovereign immunity also lacks merit. The state sovereign immunity doctrine is "unique" because it blends traits of both an affirmative defense and a limitation on subject-matter jurisdiction. *Union Pac. R.R. Co. v. La. Pub. Serv. Comm'n*, 662 F.3d 336, 340 (5th Cir. 2011). The Fifth Circuit has instructed that a state may voluntarily invoke federal jurisdiction, and thus waive immunity, in a few, specific instances, such as by removing a case to federal court. *Id.* at 341 (citing *Meyers ex rel. Benzing*

*v. Tex.*, 410 F.3d 236, 249 (5th Cir. 2005)). However, "participation by the state in an action does not necessarily preclude a later assertion of Eleventh Amendment immunity." *Id.* at 342. In *Union Pacific Railroad*, the Fifth Circuit allowed the State of Louisiana to raise its Eleventh Amendment immunity for the first time in its appeal, after litigating the action on the merits before the district court. *Id.* at 339–40. As such, this Court will allow Defendant to raise the defense in its motion for partial summary judgment.

### C.    Whether There Are Genuine Issues of Material Fact In Dispute Regarding Williams' Gender and/or Race Discrimination Claims

Third, the Court must resolve whether there is any genuine issue of material fact regarding William's allegations of "race and/or gender" discrimination, as supported by the materials the parties have submitted in support of and in opposition to the Motion. (Doc. 1 at ¶ 31). Defendant argues that Plaintiff has not successfully established a prima facie case of either race or gender discrimination. Defendant further contends that Plaintiff failed to provide competent summary judgment evidence to establish any genuine issue of material fact regarding her level of qualification for the ORS Manager II position relative to Sonnier's. (Doc. 30 at p. 1-4). In addition, Defendant maintains that because Burch and former Unemployment Insurance Director Marianne Sullivan promoted Williams to ORS Supervisor I and also declined to promote her to ORS Manager II, the Fifth Circuit's "same actor" inference applies. (Doc. 18-1 at p. 10-11; Doc. 18-5 at p. 2).

In order to establish a prima facie case of discrimination, a plaintiff must show that (1) she belongs to a group protected by Title VII, (2) she applied for and was qualified for a job for which the employer was seeking applicants, (3) she suffered an adverse employment action, and (4) she was replaced by someone not belonging to the protected class, or that similarly situated employees not belonging to the protected class were treated more favorably under nearly identical circumstances. *Earle v. Aramark Corp.*, 247 F. App'x 519, 523 (5th Cir. 2007). Once the plaintiff establishes a prima facie case of discrimination, the employer then has the burden of articulating a legitimate, nondiscriminatory reason for the employment decision. *See, e.g., Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999). "The defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, '*if believed by the trier of fact,*' would support a finding that unlawful discrimination was not the cause of the employment action." *Id.* The defendant has the burden of production in this respect, not the burden of persuasion, and the court is not to make any credibility assessment at this stage. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993). If the defendant successfully rebuts the plaintiff's prima facie case, the plaintiff must be given "the full and fair opportunity to demonstrate" that the reason articulated by the employer is in fact a pretext for unlawful discrimination. *Bauer*, 169 F.3d at 966 (citations omitted).

Defendant acknowledges that Williams is an African American female (Doc. 30 at p. 2), that she applied for and did not receive a promotion to the position of

ORS Manager II (Doc. 18-2 at p. 1), and that Sonnier was selected for the position (Doc. 18-2 at p. 2). However, Defendant submits that Plaintiff cannot establish a violation of Title VII with regard to her gender discrimination claim because another female was promoted. (Doc. 18-1 at p. 4). The Fifth Circuit has expressly held that "when a Title VII plaintiff alleges that an employer discriminates against black females, the fact that black males and white females are not subject to discrimination is irrelevant and must not form any part of the basis for a finding that the employer did not discriminate against the black female plaintiff." *Jefferies v. Harris Cty. Cmty. Action Ass'n*, 615 F.2d 1025, 1034 (5th Cir. 1980). As such, the fact that Sonnier, as a female, was not discriminated against is irrelevant. Plaintiff has established a prima facie case of sex-plus-race discrimination that has a basis in Fifth Circuit case law.

Defendant further contends that Plaintiff cannot establish a violation of Title VII with regard to her race discrimination claim because Defendant had a legitimate, nondiscriminatory reason for denying Williams the promotion. (Doc. 18-1 at p. 5–11). Defendant essentially maintains that the position of ORS Manager II must necessarily have been filled by a person who was "required to handle pressure and stress well and to be polished," and that Sonnier demonstrated these characteristics in a way Williams did not. (Doc. 18-1 at p. 6). Defendant established and publicized the criteria and qualifications for the ORS Manager II position in the position's job description. (Doc. 15-3 at p. 13–15). The job description included the required qualifications and examples of the type of work

the successful applicant would possess and would be required to complete. *Id.* However, none of the subjective and ill-defined criteria identified by Defendant in its Motion as necessary for the position—for example, "polish[]," the ability to "handle pressure," "drive," "get-up-and-go," a disposition that is not "emotional" or "sensitive," or even strong communication and writing skills (Doc. 18-1 at p. 6–11)—are listed in the job description. (*See* Doc. 15-3 at p. 13–15). Plaintiff also provided the Court with her January 2010 Overall Rating and Review which Burch stated that Plaintiff's performance "exceed[ed] requirements" and gave Plaintiff the highest possible rating regarding the quality of her work product, dependability, cooperativeness, adaptability, and daily decision-making and problem-solving.

The Fifth Circuit has clearly stated that "a promotional system which is based upon subjective selection criteria is not discriminatory per se." *Page v. U.S. Indus., Inc.*, 726 F.2d 1038, 1046 (5th Cir. 1984). However, the Circuit has also concluded that "[s]election processes which rely on subjective judgments, despite the corralling by objective standards, provide the opportunity for the intentional discrimination cognizable in a disparate treatment action." *Id.* (quoting *Pegues v. Miss. State Emp't Serv. of Miss. Emp't. Sec. Comm'n*, 699 F.2d 760 (5th Cir. 1983)). The position description for the ORS Manager II position was objective, but the decision to promote, as described by Defendant, effectively turned on discretionary decisions. As such, the Court finds that Plaintiff's summary judgment evidence has presented a genuine issue of material fact regarding whether Defendant's proffered

legitimate, nondiscriminatory reason for promoting Sonnier instead of Williams is pretext for an unlawful and discriminatory employment decision.

Similarly, Plaintiff raises a genuine issue of material fact regarding whether the "same actor" inference is applicable in this case. The "same actor" inference creates a rebuttable presumption that an adverse action imposed on a plaintiff was not the result of unlawful discrimination when the same person both hires and fires, or imposes some other adverse action on, the plaintiff. *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996) (abrogated in part on other grounds, *Russell v. McKinney Hosp. Venture*, 235 F.3d 219 (5th Cir. 2000)); *Trevino v. City of Fort Worth*, No. 4:12-CV-717-A, 2013 WL 4516643, at *7 (N.D. Tex. Aug. 23, 2013). The Fifth Circuit expressly "[did] not rule out the possibility" that a plaintiff could prove a case of discrimination despite the "same actor" inference if the facts were "sufficiently egregious." *Brown*, 82 F.3d at 658. In this case, the Court finds that the direct conflict between the published and required qualifications for the position, and the combination of Williams' positive performance reviews and the fully subjective reasons Defendant proffers for promoting Sonnier, present sufficient grounds for further exploration of possible pretextual conduct. Moreover, as Plaintiff raised in her Opposition (Doc. 22 at p. 19–20), there is a genuine issue of material fact as whether the "same actor" inference is applicable to this case. Defendant brought into question the role other LWC administrators may have had in electing to promote Sonnier, as Defendant initially raised how "impressed" Secretary of Labor Eysink and Undersecretary Foy were with Sonnier's

performance in arguing that Sonnier "had a demonstrated ability to handle pressure well and was polished." (Doc. 18-1 at p. 9). As Defendant has made these subjective criteria central to its proffered legitimate, nondiscriminatory reason for declining to promote Williams, the extent to which additional and influential actors who Defendant states had such an impression of Sonnier were involved in the promotion decision must be part of the fact finder's consideration of pretext.

Accordingly,

**IT IS ORDERED** that Defendant's **Motion for Partial Summary Judgment (Doc. 14)** is **GRANTED IN PART AND DENIED IN PART.** The Court finds that Plaintiff's charge of discrimination was timely filed and that she properly exhausted her administrative remedies prior to filing this action. However, the Court also finds that Plaintiff's claim of racial discrimination under 42 U.S.C. § 1981 is barred by the sovereign immunity doctrine.

**IT IS FURTHER ORDERED** that Defendant's **Motion for Partial Summary Judgment (Doc. 18)** is **DENIED.** Plaintiff's Title VII gender and/or race discrimination claims survive.

Baton Rouge, Louisiana, this _11th_ day of September, 2015.

BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA